UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LEAGUE OF WOMEN VOTERS
OF ARKANSAS, et al.                                                                                    PLAINTIFFS

v.                                         No. 5:20-CV-05174

JOHN THURSTON, in his official
capacity as the Secretary of State
of Arkansas, et al.                                                                                    DEFENDANTS

## OPINION AND ORDER

Defendants filed a motion (Doc. 43) to dismiss the second amended complaint and a brief (Doc. 44) in support. Plaintiffs filed a response (Doc. 47) in opposition. On September 23, 2021, Court heard oral argument (Doc. 52) remotely via videoconference and took the matter under advisement.

Defendants ask the Court to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing Plaintiffs lack standing and Defendants have sovereign immunity from Plaintiffs' claims, under Rule 12(b)(6), arguing Plaintiffs have failed to state a claim upon which relief can be granted, and under Rule 12(b)(7), arguing Plaintiffs have failed to join indispensable parties required by Rule 19. At this stage, where the Court has only the complaint before it to assess whether Plaintiffs allege a plausible cause of action and Defendants make a facial attack on jurisdiction, the Court "[a]ccept[s] the allegations as true for the purpose of dealing with the legal issues raised by the motions to dismiss." *Guessefeldt v. McGrath*, 342 U.S. 308, 310 (1952); *see Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (distinguishing standards of review for facial and factual attacks on jurisdiction). The motion will be granted in part, as stated herein.

**I.  Suggestion of Death**

Plaintiffs filed a suggestion of death (Doc. 48) for Plaintiff Robert William Allen pursuant

1

to Federal Rule of Civil Procedure 25(a)(1). Dr. Allen died on May 8, 2021, rendering his separate claims for relief moot, and they will be dismissed. *Accord Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006) (remanding with direction to dismiss injunctive relief claims as moot following plaintiff's death).

**II.     Standing**

Defendants argue Plaintiffs lack standing to bring this action. The Court's prior opinion and order (Doc. 34) and the subsequent amended complaint (Doc. 42) adequately address much of Defendants' standing argument. The complaint alleges concrete and particularized injuries to both the organizational Plaintiff and the individual Plaintiffs, fairly traceable to and redressable by Defendants, though Defendants' traceability and redressability argument merits further discussion.

Defendants again raise the issue that Arkansas state law precludes them from propounding the rules Plaintiffs seek. *See Ark. St. Bd. Of Election Comm'rs v. Pulaski Cnty. Election Comm'n.*, 437 S.W.3d 80, 90 (Ark. 2014) (holding defendants had no authority under state law to create notice and cure procedures for absentee-ballot voters). Defendants argue they are therefore precluded from affording complete relief to Plaintiffs, and so Plaintiffs' injuries are neither traceable to Defendants nor redressable by them. The Court sees no basis for departure from its earlier ruling on this issue. First, Defendants' authority under state law is not a barrier to compliance with their obligations under federal law. *Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695 (1979) ("State-law prohibition against compliance with the District Court's decree cannot survive the command of the Supremacy Clause of the United States Constitution. It is also clear that Game and Fisheries, as parties to this litigation, may be ordered to prepare a set of rules that will implement the Court's interpretation of the rights of the parties even if state law withholds from them the power to do so." (citations omitted)).

Second, Defendants are parties connected to the challenged statutes and capable of redressing Plaintiffs' identified injuries. Defendants possess a great deal of authority related to the conduct of Arkansas elections in general, no matter that the bulk of the work in any given election is carried out by county election officials. Defendants promulgate election rules and training materials which county election officials must use when conducting elections. Ark. Code Ann. § 7-4-101(f)(2), (5); § 7-4-107(a)(2). Defendants investigate violations of election rules and enforce those rules. Ark. Code Ann. § 7-4-101(f)(9); § 7-1-109. Defendants audit elections and may sanction counties for violations by their election officials. Ark. Code Ann. § 7-4-121. The Secretary of State is the chief election officer in Arkansas. (Doc. 44, p. 17). Specific to absentee voting, the Secretary of State prescribes the form of absentee ballot applications. Ark. Code Ann. § 7-5-405. Defendants also "create[] and approve[]" the uniform voter statement county clerks include with every absentee ballot. Ark. Code Ann. § 7-5-409.

Redressability requires only that litigation success against a defendant "will relieve a discrete injury to [the plaintiff, who] need not show that a favorable decision will relieve his *every* injury." *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011) (quoting *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997)). Injunction or declaratory relief entered against Defendants "would provide at least partial redress to the alleged injury, [and] it stands to reason that they are appropriate defendants for such a suit." *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 785 (W.D. Ark. 2021).

### III. Sovereign Immunity

Defendants do not enjoy sovereign immunity that would deprive this Court of subject matter jurisdiction over Plaintiffs' claims. Plaintiffs seek declaratory relief and prospective injunctive relief against these state officers who, for the reasons set forth above, are sufficiently

connected to the challenged statutes to provide some injunctive relief, and sovereign immunity is no bar to this relief. *See ex parte Young*, 209 U.S. 123 (1908) (allowing suits for injunctive relief to bar state officials from performing unconstitutional acts otherwise allowed or required by state law); *Schwier v. Cox*, 340 F.3d 1284, 1294–97 (11th Cir. 2003) (recognizing continuing existence of historic private right of action against state officials to enforce materiality provision[1]); *accord 281 Care Comm.*, 638 F.3d at 632 ("While we do require 'some connection' between the [defendant] and the challenged statute [before allowing suit under *ex parte Young*], that connection does not need to be primary authority to enforce the challenged law."); *Tex. Democratic Party v. Abbot*, 978 F.3d 168, 179–80 (5th Cir. 2020) (holding where the Secretary of State, who was chief election officer, had statutory duties related to design of the ballot application form and distribution of that form to local authorities, sovereign immunity did not bar suit to require Secretary of State to allow absentee voting by voters who could not otherwise request absentee ballot under state law).

IV.   **Failure to State a Claim Upon Which Relief Can Be Granted**

    1.   **Constitutional Claims**

Two issues must be addressed at the outset. First, to the extent Defendants' arguments rely on a premise that the State has plenary authority with respect to the conduct of its elections, the premise is rejected outright. *Accord Williams v. Rhodes*, 393 U.S. 23, 28–29 (1968) (rejecting argument that states have absolute power to place burdens on right to vote).

Second, any disputes between the parties over whether there is a liberty or property interest in voting, or whether voting should instead be characterized only as a fundamental right, are immaterial to resolution of this case. Though Plaintiffs and those courts that have confronted the

---

[1] The statute addressed in *Schwier*, 42 U.S.C. § 1971, was recodified to 52 U.S.C. § 10101.

issue and affirmatively found that states cannot deprive qualified voters of the fundamental right to vote without due process of law persuasively make their point, it does not necessarily follow that general due process precedent can independently guide the Court to resolution of the issues before it. Instead, the Eighth Circuit has explained where state law "implicates the right to vote . . . [the Court] appl[ies] the so-called *Anderson/Burdick* standard when evaluating the statute's constitutionality." *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 907 (8th Cir. 2020); *see also Moore v. Martin*, 854 F.3d 1021, 1025 n.6 (8th Cir. 2017) ("We confine our analysis to Moore's First Amendment rights and due process rights under the Fourteenth Amendment and do not separately consider his claim of an equal protection violation."). The *Anderson/Burdick* test is the analysis the Court must apply to Plaintiffs' constitutional claims, and Plaintiffs' separate due process claim will be dismissed.

Under the *Anderson/Burdick* test,

> [a] court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Severe restrictions require narrow tailoring that serves a compelling state interest, while reasonable, nondiscriminatory restrictions may be justified by a state's "important regulatory interests." *Id*. (quoting *Anderson*, 460 U.S. at 788).

This is not a binary "'litmus-paper test' that will separate valid from invalid restrictions." *Anderson*, 460 U.S. at 789. Rather, the Court must "weigh[] all these factors" before reaching a decision. *Id*. This weighing must not focus too narrowly on any one challenged provision of election law, nor too broadly on state election law as a whole, but must be done in context of the

5

relevant area of election law challenged. *See Burdick*, 504 U.S. at 441–42 (holding prohibition on write-on candidates is a reasonable burden where state law provided constitutionally adequate provisions to candidates for ballot access); *accord O'Brien v. Skinner*, 414 U.S. 524, 530 (1974) (pre-*Anderson* case holding state law that denied pretrial detainees the right to vote by absentee ballot if they were detained in their home counties, but allowed pretrial detainees detained outside their home counties the right to vote by absentee ballot, was "wholly arbitrary" and "a restriction 'so severe as itself to constitute an unconstitutionally onerous burden on the . . . exercise of the franchise.'" (quoting *Rosario v. Rockefeller*, 410 U.S. 752, 760 (1973))).

The sliding-scale *Anderson*/*Burdick* test, comparing the burden on voters to the state's interests and the extent to which the burdens are justified by those interests, is case-specific. Relevant to this case, the people of Arkansas have legislatively established a process by which they allow qualified Arkansas voters to vote absentee, rather than in person. When Arkansas voters choose to exercise their right to vote by casting an absentee ballot, voters surrender their right to cast a ballot in person in that same election. Absentee voters must first request an absentee ballot from their county clerk, which requires voters to provide their name, address, date of birth, a sworn statement that they are registered to vote and are the voter who seeks the absentee ballot, and a signed attestation to the correctness of the information on the form. Qualified voters then receive an absentee ballot to be returned to the county clerk in a secrecy envelope, and when returned this secrecy envelope must be accompanied by a voter statement and a verification of voter registration. The voter statement requires voters to again provide their name, address, and date of birth, and a sworn statement that they are the registered voter who cast the absentee ballot. Voters must sign this voter statement under penalty of perjury. All materials must be returned to the county clerk. Relying on the training materials and in-person education from Defendants, county election

officials process and canvass the returned absentee voter materials, reviewing the verification of voter registration, checking the voter statement for omissions, and comparing the voter statement and absentee ballot application for discrepancies. Where there is a discrepancy between information on the voter statement and application, or information is omitted, the absentee ballot is rejected and not counted. Absentee voters are not given an opportunity to have the ballot cast as a provisional ballot and are not given any notice that their absentee ballot has been rejected until after the election. The ultimate decision to reject an absentee ballot because of a discrepancy may be made only by the county boards of election commissioners. Where a first-time voter fails to provide an acceptable copy of his or her photo identification, the absentee ballot is marked provisional and absentee voters are permitted to cure the deficiency by noon on the Monday following election day. Voters who request and receive an absentee ballot are not obligated to vote absentee, but may choose instead to vote in person.

At the pleading stage, with all factual allegations and reasonable factual inferences construed in Plaintiffs' favor, this is enough, if only barely, to proceed to discovery on the constitutional claims. Because the Court applies the sliding scale *Anderson*/*Burdick* analysis, the Court will benefit by giving each party the opportunity to build a record. Plaintiffs will have an opportunity to discover facts to support their contention that the Arkansas absentee ballot process results in the sort of arbitrary denial of the right to vote that the Supreme Court has in the past found to be severe, while Defendants will have an opportunity to build a record in support of their argument that, whether a severe burden or some lesser burden exists, sufficiently important State interests also exist to support the burden, and the current process is appropriately tailored in service of those interests.

### 2. Materiality Provision Claims

A private right of action exists to enforce the materiality provision of the Civil Rights Act 52 U.S.C. § 10101, if not implied in the statute then brought pursuant to 42 U.S.C. § 1983. *See Schwier*, 340 F.3d at 1294–97 (disagreeing with newly-developed 6th Circuit precedent and holding longstanding private right of action to enforce voting rights survived amendment adding enforcement by the Attorney General); *Hoyle v. Priest*, 265 F.3d 699, 704–05 (8th Cir. 2001) (affirming in part and reversing in part judgment for defendants in a private § 1983 action to enforce predecessor of § 10101); *accord Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252–59 (2009) (explaining that absent clear Congressional intent, existence of other avenues of relief does not bar private § 1983 action to enforce federal statutory rights).

The materiality provision reads:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B). For purposes of this provision, "the word 'vote' includes all action necessary to make a vote effective." *Id.* § 10101(a)(2)(3)(A); (e). Arkansas voters are qualified to vote under state law if they are United States citizens, Arkansas residents, at least 18 years old, lawfully registered to vote in the election, and present a valid photo identification or copy thereof. Ark. Const. Art. 3, § 1.

Where absentee voters have only one opportunity to provide information reflecting their citizenship, residency, age, registration status, or photo identification, it would be difficult to find that rejection of their ballots because of an error or omission concerning this information violates the materiality provision. However, where State law requires absentee voters to provide some of

8

that information several times and, as Plaintiffs allege, they have correctly provided that information at least once, but absentee voters' ballots are nonetheless rejected on the basis of a mismatch or omission in one of the multiple documents they have provided, they have plausibly alleged a denial of the right to vote on the basis of immaterial errors or omissions. As Defendants recognize (Doc. 44, p. 69), the materiality provision is intended to address those state election practices that increase the number of errors or omissions on papers or records related to voting and provide an excuse to disenfranchise otherwise qualified voters. Discovery may yield evidence demonstrating the materiality of requiring this information to be provided on multiple forms, but at this stage of litigation the Court draws reasonable inferences in Plaintiffs' favor, and the motion to dismiss these claims will be denied.

### 3. Likely Denial of Injunctive Relief

Though Plaintiffs have stated claims upon which some relief can be granted, the Court cautions that even from the face of the complaint it does not appear this is a case in which the requested injunctive relief should be granted. The Court has the authority in the event of an ongoing violation by a state of federal law or constitutional rights to enjoin state officials, but having considered the allegations and record developed in this case thus far, the Court is skeptical that discovery will yield facts that could support relief much beyond the declaratory relief Plaintiffs seek. "A plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A [permanent] injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 258 U.S. 453, 456 (1919)).

Assume for the sake of argument that Plaintiffs prevail on the merits and the Court finds Arkansas's absentee ballot process violates the Constitution or federal law and issues declaratory relief on that basis. Defendants' predecessor commissioners on the State Board of Election Commissioners have shown a willingness to provide notice and cure provisions for absentee voters, which led to the Arkansas Supreme Court case holding Defendants have no authority under Arkansas law to promulgate such a rule. *Ark. St. Bd. Of Election Comm'rs*, 437 S.W.3d 80. The complaint gives the Court no reason to believe Defendants would not choose to reinstate their prior rule if the Court declared their authority under federal law to again do so on an interim basis until the state legislature could enact new election laws that provide for a permissible absentee ballot process. With no factual allegations or evidentiary record showing Arkansas would willfully persist in a denial of voting rights to its citizens, it is difficult for the Court to see how the injunctive relief Plaintiffs request would be appropriate in this case.

This is not to suggest that the Court would refrain from taking a more active role following any hypothetical declaratory relief if Defendants and the State of Arkansas were then to continue to violate Plaintiffs' rights. *Accord Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. at 696 ("In short, we trust that the spirit of cooperation motivating the Attorney General's representation will be confirmed by the conduct of state officials. But if it is not, the District Court has the power to undertake the necessary remedial steps and to enlist the aid of the appropriate federal law enforcement agents in carrying out those steps."). However, it is imprudent even at this stage of litigation for the Court to leave the parties with the impression that it will take such active steps absent facts clearly demonstrating their necessity.

In short, even granting reasonable factual inferences in Plaintiffs' favor, it is not reasonable to assume either Defendants or the State of Arkansas would continue to infringe on voting rights

if the Court were to grant declaratory relief. *Accord Republican Party of Ark. v. Faulkner Cnty.* 49 F.3d 1289, 1301 (8th Cir. 1995) (reiterating the primacy of the right to vote and finding Arkansas law infringing upon that right unconstitutional, but concluding "[c]ognizant of our role as a federal court, we do not purport to advise Arkansas on the best means of rendering constitutional its election code: that decision rests with the sound judgment of the Arkansas legislature."). Because this case will proceed to discovery, the Court will not yet deny injunctive relief. However, the Court is prepared to summarily deny injunctive relief following discovery absent a strong evidentiary showing that such relief is necessary and appropriate to remedy the injuries identified in the complaint.

**V.      Joinder of Necessary Parties**

Defendants argue this case should be dismissed because Plaintiffs have failed to join the county boards of election commissioners, who Defendants argue are necessary and indispensable parties to afford complete relief. Defendants argue the county commissioners are necessary parties because the county boards have "exclusive statutory authority to process, canvass, and count absentee ballots and to '[e]nsure compliance with all legal requirements relating to the conduct of elections.'" (Doc. 44, pp. 20–21). As an initial matter, Defendants' statutory authority to promulgate rules and training materials and to investigate and punish violations of Arkansas election laws makes clear the county boards' authority to ensure compliance with legal requirements is not "exclusive." More importantly, the county board of election commissioners in each county is obligated by the same law that charges the county board to ensure compliance with legal requirements to "[e]xercise its duties consistent with the training and materials provided by the State Board of Election Commissioners." Ark. Code Ann. § 7-4-107(a)(2). Most importantly, should Plaintiffs prevail in this action, the declaratory relief imposed by the Court

11

would be among those legal requirements with which a county board would be obligated to ensure compliance. Ark. Code Ann. § 7-4-107(a)(1). Defendants have not persuaded the Court the county election commissioners are necessary parties under Rule 19 whose absence in this litigation requires dismissal.

## VI. Conclusion

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 43) is GRANTED IN PART and DENIED IN PART. Plaintiff Robert William Allen's claims are DISMISSED AS MOOT. Plaintiffs' separate due process claims are DISMISSED WITH PREJUDICE. Plaintiffs' remaining claims remain pending.

IT IS SO ORDERED this 15th day of November, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE